*In re* ESTATE OF WILLIAM H. EVANS, Deceased.—(DELMAR MASTERS, Conservator of the Estate of Helen A. Evans, Incompetent, Petitioner-Appellee, *v.* GLENN R. MAPES *et al.*, Defendants and Counterclaimants-Appellants.)

(No. 74-169; ⬛⬛⬛⬛⬛⬛⬛⬛⬛)

Second District (1st Division)—September 5, 1975.

Louis A. Nack and William A. Kelly, both of Nack, Richardson & Nack, of Galena, for appellants.

Harold D. Nagel and Robert E. Robbins, both of Stockton, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The conservator of the estate of Helen A. Evans, an incompetent person,[1] petitioned for the sale of the residual real estate in the estate of William H. Evans, the deceased husband of the incompetent. The defendants, who are the descendants of the parents of William Evans, the testator, filed an answer and also a cross-complaint (counterclaim) to construe the will. The trial court construed the will in favor of the incompetent, giving her a fee simple estate in the residual real estate. The defendants-counterclaimants appeal.

William H. Evans executed his will on March 27, 1920. In the will he gave the residence to his wife Helen, together with household goods and the sum of $3,000. The will further provided, as material here:

"Third: I hereby give, devise and bequeath all the rest, residue

---

[1] The death of the incompetent has been suggested to this court and, on motion, the attorney for her estate has been substituted as an additional plaintiff-appellant.

and remainder of my personal estate, wherever situated, unto my wife, Helen A. Evans and my daughter Celia Stevens, the same to be divided equally between them, share and share alike.

Fourth: I hereby give, devise and bequeath the use, rents, income and control of all the remainder of my real estate, wherever situated, unto my wife, Helen A. Evans, and my daughter, Celia Stevens, for and during the term of their natural lives, and upon the death of either of them the survivor shall have the use, rents and income of said real estate for and during the lifetime of such survivor.

Fifth: Should my daughter, Celia Stevens, at her death, leave any issue of her body surviving her, then, I give, devise and bequeath unto her said issue, in fee simple, all the rest, residue and remainder of my said real estate, the same to be divided among them, according to the law of descents of the State of Illinois, but should my daughter, Celia Stevens, at the time of her death, leave no issue of her body surviving her, then all the remainder of my said real estate shall descend in fee simple, to my own heirs at law living at the time of the death of my said daughter. All gifts under this Fifth Clause of my said Will shall be subject to the life estate given in the Fourth Clause of said Will."

William H. Evans died on April 13, 1937, leaving his wife Helen and his daughter Celia as his only heirs. Celia died on February 1, 1966, leaving no child, no descendant of a child, and leaving her mother, Helen, as her only heir at law.

The trial court concluded that there was no compelling reason to indicate that William H. Evans intended to exclude his widow Helen from the class of persons who would inherit the residuary estate as heirs at law living at the time of the death of his daughter Celia. The court further concluded that such heirs should be determined as of February 1, 1966, the date of the death of Celia, rather than at the date of the testator's death.[2]

The defendants contend that the language of the will, and in particular that found in Clauses Four and Five, shows that the testator did not intend to have his surviving spouse included as a member of the class

---

[2] Article II, section 11, of the Illinois Probate Act in effect at the time of Celia's death provided:

"Third, when there is a surviving spouse but no descendant of the decedent: the entire estate to the surviving spouse, * * *." (Ill. Rev. Stat. 1965, ch. 3, par. 11.)

The Act further provided:

"[§ 2. This amendatory Act of 1963 shall apply to the estates of persons dying on or after its effective date.]"

of contingent remaindermen upon the death of his daughter without issue since he designated "my own heirs at law living at the time of the death" of his daughter as the class to take the residual estate. They further contend that in construing the will to ascertain the testator's intent we should be governed by the Statute of Descent in effect at the date of the testator's death.

In construing a will the testator's intention is primary and must be arrived at, if possible, from the words of the will itself. (See, e.g., *Bradshaw v. Lewis* (1973), 54 Ill.2d 304, 308; *Weber v. Hawkins* (1964), 30 Ill.2d 278, 283-84.) A gift of a future interest as a matter of testamentary construction is construed as a gift to such persons as are his heirs at the time of the testator's death unless a different intention is plainly manifested in the will. (See *Hull v. Adams* (1948), 399 Ill. 347, 351; *Le Sourd v. Leinweber* (1952), 412 Ill. 100, 105; *People v. Camp* (1919), 286 Ill. 511, 517.) A testator may, however, by his will expressly or by necessary implication fix the time when the members of a class of remaindermen are to be ascertained as a period other than the time of testator's death. *Bergendahl v. Stiers* (1956), 8 Ill.2d 257, 261-62; *Bolon v. Dains* (1964), 54 Ill.App.2d 64, 70. See also *Fountain v. Fountain* (1940), 308 Ill.App. 330, 336.

In the present case, Evans clearly stated in his will that in the event his daughter Celia should die without issue surviving her, his residuary real estate was to "descend in fee simple, to *my own heirs at law living at the time of the death of my said daughter*." (Emphasis added.) His intention to have the membership of the class of "my own heirs at law" determined at some point subsequent to his death is plainly manifested. Therefore the membership of the class of remaindermen who take as a result of Celia's death without surviving issue must be determined as of the date of her death, February 1, 1966.[3]

---

[3] From the language in the will it also appears clear that Evans intended that the law of descent in effect at his daughter's death would control distribution of the respective property interests. In the fifth clause of his will he plainly stated:

"Should my daughter, Celia Stevens, at her death, leave any issue of her body surviving her, then, I give, devise and bequeath unto her said issue, * * * to be divided among them, according to the law of descents of the State of Illinois, but should my daughter * * * at the time of her death leave no issue * * * then all the remainder * * * shall descend in fee simple to my own heirs at law living at the time of the death of my said daughter."

When, by the terms of an instrument, heirs are to be ascertained at some point in time other than the death of the ancestor, those terms will be controlling. (Simes, Handbook of the Law of Future Interests, ch. 20, at 223 (2d ed. 1966); Restatement of Property § 308, at 1706 (1940).) Since membership in the class of "my own heirs at law living at the time of the death of my said daughter" is to be determined at

■■ Where a life estate is devised to one of several heirs at law of the testator with the remainder to the testator's heirs at law the life tenant is included within the term "heirs at law" and thus included in the devise of the remainder in the absence of anything to indicate an intention to exclude the life tenant. (*Himmel v. Himmel* (1920), 294 Ill. 557, 561.) If the will is construed to find that the testator's intent was to have his heirs ascertained as of the date of his death, it is not inconsistent for the testator to give a life tenant an interest in fee in the remainder (*Gridley v. Gridley* (1948), 399 Ill. 215, 218); nor does the fact that the life tenant is the testator's sole heir in such a case prevent his taking the remainder in fee upon or after his death under a gift to the testator's heirs contingent upon the death of the life tenant without surviving issue. *Hull v. Adams* (1948), 399 Ill. 347, 351-52; Restatement of Property § 308, at 1706 (1940).

■■ Where the courts find from the will that a testator did intend to exclude a life tenant from the class of his heirs to take the remainder interest as the result of a contingency, such as death of the life tenant without surviving issue, it is generally held that the testator's heirs are to be determined at the death of the life tenant so as to preclude the life tenant from taking the remainder interest. *Whitmore v. Starks* (1959), 17 Ill.2d 202, 207.

We have determined that the intent of the testator was to have his heirs at law ascertained at the time of the death of his daughter Celia and that the law of descent in effect at that point is to control. Since the testator's wife was still living at that time it would be consistent to hold that she was technically the "surviving heir at law" and should take the remainder interest. Despite this consideration, we find it necessary to conclude from the language of the will and the projected testamentary scheme that William H. Evans intended to exclude his wife Helen from the class of heirs who would in fact take the remainder interest.

From the whole of the will we conclude that the testator did not refer to "heirs at law" in the technical sense, *i.e.*, those persons who would inherit by intestacy, but "in the popular or colloquial sense of his blood

---

Celia's death, it is not reasonable to conclude that the testator was seeking to apply a statute in force nearly 30 years earlier at the date of his death in 1937.

The defendants have noted that the statute in effect at Celia's death (Ill. Rev. Stat. 1965, ch. 3, art. II, par. 11) applies "to the estates of persons dying on or after its effective date," and thus argue that the statute was not intended to have retroactive effect. The language clearly avoids reference to the estates of persons dying prior to its effective date and it cannot be inferred that the legislature intended to deprive a testator who died prior to the 1963 amendatory act of the right to designate a particular statute to be applied in determining the meaning of the word "heirs" used in an instrument executed by him. See *Spaugh v. Ferguson* (1970), 130 Ill.App.2d 699, 707-08.

kindred." (See *Stites v. Gray* (1954), 4 Ill.2d 510, 516; *Barnhart v. Barnhart* (1953), 415 Ill. 303, 314.) The reference to the testator's "own" heirs at law in the fifth clause of the will is indicative of the testator's intention to devise the remainder gift to his blood relatives. This additional phrase appears to add a colloquial reference rather than indicate that the word "heirs" is considered in its technical sense.

Other language in the will also indicates the testator's intention to exclude his widow from the remainder estate. William Evans' intention to distinguish between life estates and remainders is buttressed by his reference in the fifth clause of the will:

> "All gifts under this Fifth Clause of my said Will shall be subject to the life estate given in the Fourth Clause of said Will."

If the testator had expected that his wife would take the fee if she outlived his daughter in the event the daughter died without issue there would have been no need to state the intention to protect the life estate in the widow.

■■ The fact that the testator used the word "descend" in describing the gift to his heirs following the devise to the issue, if any, of his daughter Celia is also consistent with this interpretation as showing his interest in lineal descendants. The further fact that the testator provided for an absolute fee in his wife in the homestead property and gave her all of the household goods and a $3,000 cash bequest is also consistent with the view that the testator knew the difference between a life estate and a fee estate and intended by the later clauses in the will to provide only a life estate for his widow in his residuary property.

For the reasons stated we, therefore, reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

GUILD and HALLETT, JJ., concur.