(No. 38130.—

JOHN C. WEBER *et al.,* Exrs. *vs.* FLORENCE HAWKINS *et al.,* Appellants.—(DORTHEA BURGENER *et al.,* Appellees.)

*Opinion filed January 22, 1964.*

Klingbiel, C.J., and House, J., dissenting.

Marshall, Feiger, Robison & Quindry, of Fairfield, for appellants.

Arnold & Bamberth, of Olney, (Peter H. Bamberth, of counsel,) for appellees.

Mr. Justice Hershey delivered the opinion of the court:

The executors of the will of Lottie Lucas Lutz, deceased, filed a petition for construction of her will, and joined the beneficiaries thereunder as defendants. They alleged that the beneficiaries named in clause III of the will claim the oil royalty and mineral interest described therein, while the residuary beneficiaries claim the same property. Seven of the residuary beneficiaries appeal the decree of the circuit court of Richland County awarding the oil royalty and mineral interest to the clause III beneficiaries.

Lottie Lucas Lutz, a resident of Olney, Illinois, died testate August 19, 1961, and her will was duly admitted to probate. Letters testamentary were issued to John C. Weber and Emanuel Miller. Her will provides:

"I. [Payment of expenses and debts.]

II. [Specific devises of real estate to her niece, Florence Hawkins, and to Nelle Miller, respectively.]

III. Upon my death it is my will that the Lucas Farm, consisting of 340 acres more or less, be sold and proceeds divided equally

between Dorothea Burgener, Karl McWilliams and Alden Fleming. And should any of these beneficiaries be deceased at the date of my death, their respective interests in said bequests shall pass to their heirs at law to be determined at the date of my death. It is my will that the oil royalty and other mineral interests underlying said premises be reserved to beneficiaries named hereafter, for a period of 15 years from the date of my death or in the event production of any such minerals or oil is obtained, extend that period as long thereafter as such minerals and/or oil may be produced in commercial quantities. Be it further provided that said Executor shall, before offering said property for sale, give the three named beneficiaries first opportunity to purchase any part or all of said property at appraised value.

IV. [Specific bequests of furniture or keepsakes to Nelle Miller, Florence Hawkins, Dorothea Burgener, Gloria Mlekush, Helen McLaughlin and Beulah Clements.]

V. Upon my death it is my will and I hereby devise all of my shares in the Olney Loan and Building Association or Olney Savings and Loan Association, Olney, Illinois, to Beulah Clements; all of my stock in the First National Bank in Olney, Olney, Illinois, to Nelle Miller; and all my livestock and farm equipment to Emanuel Miller; provided that should either or both Nelle Miller or Emanuel Miller fail to survive me, their respective bequests shall pass under the residuary clause of this will, to my heirs at law. Upon my death it is my will and I hereby devise and bequeath to my sister, Lora Bowlby, $5000.00 in E Bonds conditioned upon my sister surviving me. If she should fail to survive me, they shall be divided among my other heirs, as provided in the residuary clause of this Will.

VI. All the rest and residue of my estate of whatsoever nature and description I hereby order and direct that same be sold and converted into cash and the proceeds thereof distributed and divided as follows: a one-fifteenth share each to Frank West, Lowell West, James West, Helen McLaughlin, William Cazel, Robert E. Cazel, Austin Cazel, Beulah Clements, Lora Bowlby, Leo Bowlby, Clara Honecker, Joseph Bowlby, John Bowlby, Florence Hawkins and Carl Bowlby. And be it further provided that it is my intention, desire, and will that should any beneficiary named in this will predecease me in death, their interest in my estate shall pass to their surviving heirs at law to be determined as of the date of my death and this provision shall be used as construing the entire will unless otherwise designated.

VII. [Disposition of clothing and personal effects.]
VIII. [Nominates Executor.]"

At the time of her death Lottie Lucas Lutz owned the

"Lucas Farm", a 340-acre farm situated in Richland County, and on which were located producing oil wells.

John C. Weber and Emanuel Miller, co-executors, filed their petition for construction of the will with the circuit court. of Richland County and named all 21 beneficiaries under the will as defendants. They alleged that the residuary beneficiaries construed the will as devising the oil royalty and mineral interest described in clause III to them, while the beneficiaries named in clause III, Dorothea Burgener, Karl McWilliams and Alden Fleming, construed the will as giving this interest to them. The appellants and Lora Bowlby, who died during the pendency of the action and whose interest passed to her children, six of the appellants, answered alleging that the oil royalty and mineral interest devised by clause III passed to them as the named beneficiaries in the residuary clause. Dorothea Burgener, Karl McWilliams and Alden Fleming answered, asserting that the phrase "named hereafter" was a scrivener's mistake and that the will, properly construed, gave them the reserved oil royalty and mineral interest. The remaining defendants defaulted or filed disclaimers.

Upon hearing, the parties stipulated that the testatrix had been married to Dr. Clinton E. Lucas, who died in 1958. In 1954 Dr. Lucas had placed the "Lucas Farm" in joint tenancy with his wife, the testatrix. The "Lucas Farm" had been owned by the Lucas family for many years, and a large portion was inherited by Dr. Lucas from his father; parts were acquired by the Lucas family as early as 1882. Dorothea Burgener, Karl McWilliams and Alden Fleming were niece and nephews to Dr. Lucas, but no relation to testatrix. The 15 residuary beneficiaries are all related to the testatrix. Lora Bowlby, now deceased, was a sister, and the other residuary beneficiaries are nieces, nephews and a grandnephew.

Testimony developed that William E. Lutz married

testatrix in September, 1959, but they separated after one month and the former now claims no interest in her estate. Dorothea Burgener, Karl McWilliams and Alden Fleming were frequent visitors to the "Lucas Farm" eight or ten years ago, but had only visited infrequently in recent years. The value of Lottie Lucas Lutz's estate for Federal estate tax purposes was $234,591.44. The "Lucas Farm" was valued at $40,857, and, pursuant to the option contained in clause III, Alden Fleming purchased it at that figure. The executor's deed to Alden Fleming excepted the oil royalty and mineral interest here in dispute. The value of the residuary estate was approximately $56,000. There are producing oil wells on the "Lucas Farm" which had been yielding to the executors $450-$580 per month. The estate also included oil royalties in land other than the "Lucas Farm", but these were not producing.

The circuit court found that the proper construction of clause III, considering the entire wording of the will, was that it devised the oil royalty and mineral interest to Dorothea Burgener, Karl McWilliams and Alden Fleming for a term of 15 years or for as long as minerals or oil are produced in commercial quantities. The co-executors were directed to pay over accumulated royalty payments to the clause III beneficiaries, and the oil purchaser, the Pure Oil Company, a cross-defendant, was directed to pay future royalty payments to them.

The oil and mineral interest in dispute is for a term of "15 years from the date of my death or in the event production of any such minerals or oil is obtained, extend that period as long thereafter as such minerals and/or oil may be produced in commercial quantities." A freehold being involved, the appeal comes directly to this court. *Cravens* v. *Hubble*, 375 Ill. 51; *Douglass* v. *Treat*, 246 Ill. 593; *Bruner* v. *Hicks*, 230 Ill. 536.

Appellants here argue that the critical phrase "beneficiaries named hereafter" should be construed and in-

terpreted in the customary and natural manner; that the testatrix would, following this phrase in clause III, designate by name the beneficiaries to receive the reserved oil royalty and mineral interest. Any ambiguity that exists involves the uncertainty as to whether the testatrix intended to give this interest to the 20 beneficiaries designated by name in clauses IV, V, and VI or just to the 15 residuary beneficiaries named in clause VI. The latter being related to the testatrix, it is presumed in case of doubt she intended them.

The appellees urge in support of the decree entered below that the phrase "beneficiaries named hereafter" is obviously a scrivener's mistake; that the term "hereafter" should be ignored or deleted. The will, considered as a whole, clearly manifests the testatrix's intention to give the reserved oil royalty and mineral interest to them. In support of their contention the clause III beneficiaries submit that (1) a reading of the entire will discloses a plan to give the interest to them; (2) the term "beneficiaries" is used only to designate them throughout the will; (3) the residuary clause requires the executors to sell the property passing thereunder, whereas they are prohibited from selling the oil royalty and mineral interest; (4) each clause of the will disposes of the entire property involved to the beneficiaries named therein, and (5) they are in fact "named hereafter" in the fourth sentence of clause III.

In construing a will the court's primary mandate is to give effect to the testator's intention, but, as the multitude of cases involving will construction indicate, frequently this is a difficult task. The intention of the testator is to be ascertained from the provisions of his will; the intention sought is not that which by inference may be presumed to have existed in the mind of the testator, but that which, by words used in the will, he has expressed. (*Dahmer* v. *Wensler,* 350 Ill. 23, *Bond* v. *Moore,* 236 Ill. 576.) The testator's intention must be determined from the language used in the

will, but if the language is such that the intention is doubtful, the court may consider the circumstances surrounding the testator when the will was made, as shown by extrinsic evidence, so as to place itself in the position of the maker and glean from the language used in the instrument the intention of the maker in using such language. (*Davidson* v. *Davidson,* 2 Ill.2d 197.) Extrinsic evidence may be used to show what appears to be clear and certain in the will to be in fact ambiguous. (*Weir* v. *Leafgreen,* 26 Ill.2d 406.) In appropriate cases where the meaning of the testator is clear and unmistakable, the court may ignore terms that are irreconcilable with such meaning. (*Cahill* v. *Michael,* 381 Ill. 395.) However, the court is not permitted to reform a will and may not alter a bequest on the presumption that this is what the testator desired. *Appleton* v. *Rea,* 389 Ill. 222; *Graves* v. *Rose,* 246 Ill. 76.

An examination of the will discloses that it is in customary form and well drafted, with the exception of the ambiguity here in dispute. The phrase "beneficiaries named hereafter" is suspect, as it obviously creates uncertainty as to who are the intended beneficiaries when none are named with specific reference to the oil royalty and mineral interest subsequently in the will. It is doubtful that the testatrix intentionally created this ambiguity.

It is clear that the testatrix did not want the executor under clause III of her will to sell the oil royalty and mineral interest and distribute the proceeds thereof with those from the surface of the "Lucas Farm." A purpose to give this interest to other than the clause III beneficiaries may have prompted this different treatment. But another and equally plausible purpose occurs to us. The will of Lottie Lucas Lutz is dated August 10, 1961, and she died August 19, 1961. There were producing oil wells on the "Lucas Farm" at the time of testatrix's death, and they were undoubtedly producing at the time she executed her will. Any sale of a producing oil interest might net

considerably less than what the interest would yield over future years. The testatrix may well have decided that it would be undesirable to sell the producing interest, that such a sale might sacrifice the interest for a fraction of what it might eventually yield and that she would leave a far more valuable property interest to her beneficiaries by giving them the oil royalty and mineral interest in kind.

The evidence also shows that the "Lucas Farm" came from the testatrix's deceased first husband and his family; in her will the benefit of the surface of this land is clearly given to Dr. Lucas's relatives. Did she wish the oil royalty and mineral interest underlying the "Lucas Farm" to go to these relatives as well, or to her own relatives as contended by the appellants; we are of the opinion that she clearly and unmistakably intended the former.

In clause V of the will the testatrix provides that in the event of lapse, the bequest should "pass under the residuary clause of this Will, to my heirs at law" and again as to lapse, she provides "shall be divided among my other heirs, as provided in the residuary clause of this Will." The phrase in question "beneficiaries named hereafter" is entirely dissimilar to those just cited above, which further indicates that the testatrix did not intend the oil royalty and mineral interest to go to the residuary beneficiaries. Nor are we inclined to believe that the testatrix intended all 20 beneficiaries named after clause III. Such a construction would result in unusual and different treatment of the beneficiaries not warranted by the context of the will or the testatrix's circumstances; it would give an interest to Dorothea Burgener, one of the clause III beneficiaries, to the exclusion of the other two; it would give Gloria Mlekush, the legatee of a "green needle-point chair," an interest in the oil royalty and mineral interest equal to that given Lora Bowlby, sister of the testatrix, residuary legatee and specific legatee of $5,000 in E Bonds.

From an examination of the will as a whole, considered

in light of the testatrix's circumstances, the intent of Lottie Lucas Lutz to devise the oil royalty and mineral interest described in clause III to Dorothea Burgener, Karl McWilliams and Alden Fleming is clear and unmistakable, in view of which the suffix "after" of hereafter in the phrase here in question may be disregarded. (*Cahill* v. *Michael,* 381 Ill. 395, *Caracci* v. *Lillard,* 7 Ill.2d 382.) The proper construction of clause III and the entire will of Lottie Lucas Lutz is that the oil royalty and mineral interest described in such clause is devised to Dorothea Burgener, Karl McWilliams and Alden Fleming.

There being no error in the decree of the circuit court of Richland County, it should be, and the same hereby is, affirmed.

*Decree affirmed.*

KLINGBIEL, C.J. and HOUSE, J., dissenting.