JAN WIELERT, Plaintiff-Appellee, *v.* RUTH STREVER LARSON, Indiv. and as Ex'r of the Last Will and Testament of Jennie Wielert, Deceased, *et al.*, Defendants-Appellants.

Second District   No. 79-300

Opinion filed May 13, 1980.

Charles E. Cronauer, of Rissman, Jenkins & Cronauer, of De Kalb, for appellants.

Lloyd J. Tyler and Theresa M. Banas, both of Tyler, Peskind, Solomon and Hughes, P. A., of Aurora, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Plaintiff, Jan Wielert, brought suit for the construction of his grandmother's will. The trial court construed the will and held that plaintiff was entitled to inherit under the terms of the will. The defendants, the three natural-born daughters of the testator, appealed.

Jennie Wielert, the testator, died on October 16, 1977, leaving a will executed on August 20, 1959. A codicil to the will was duly executed on October 26, 1973, appointing a daughter as executor and otherwise ratifying and confirming the will of August 20, 1959. Jennie Wielert's husband predeceased her as did her son, Clarence. Her three natural children, the defendants, survived. Clarence left no natural children

surviving, but the plaintiff, Jan Wielert, was his adopted son. The seventh and pertinent clause of the will provided:

"If any child or children of mine shall predecease me, leaving them *issue of their body* surviving them, then, in that event, I give, devise and bequeath unto such *issue of their body*, the interest that they would have taken in my estate, had they survived me, and if any child or children of mine shall predecease me leaving them no *issue of their body* surviving me, I direct that their interest in my estate shall lapse and shall pass out in equal shares, to my remaining living children and to the *issue of their body* per stirpes and not per capita." (Emphasis added.)

This case appears to be one of first impression in Illinois. The central issue in the case at bar is whether the phrase "issue of their body" as used by the testator in her will executed subsequent to September 5, 1955, plainly expressed an intent on her part to exclude adopted grandchildren from taking under the terms of that will.

Prior to 1955, section 14 of the Illinois Probate Act included a presumption that adopted children would not inherit property from the lineal or collateral kindred of the adopting parent. (Ill. Rev. Stat. 1939, ch. 3, par. 165.) However, in 1955, the Illinois legislature indicated a dramatic shift in public policy by amending this section to include a presumption in favor of the adopted child. The relevant portions of section 14 as amended were:

"A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance from the adopting parent and from the lineal and collateral kindred of the adopting parent.

* * *

For the purpose of determining the property rights of any person under any written instrument executed on or after September 1, 1955, an adopted child is deemed a natural child unless the contrary intent plainly appears by the terms thereof." Ill. Rev. Stat. 1955, ch. 3, par. 165.[1]

It is in light of this shift in public policy that this court must determine whether the phrase "issue of their body" used in a will drafted in 1959 would evince a sufficient contrary intent so as to exclude an adopted grandchild from inheritance rights under the will.

The defendants have cited a number of Illinois cases which have held the terms "issue" or "lawful issue" or words of similar import, used in pre-

[1] This statutory language now appears in sections 2—4(a), (e) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, pars. 2—4(a), (e)) in a slightly modified form; the verb "deemed" is omitted in both paragraphs. But see, "An Act relating to the construction of written instruments with regard to adopted children ° ° °." Ill. Rev. Stat. 1977, ch. 40, par. 1652.

154

1955 instruments, to exclude adopted children. But these cases are of little help in the present case for two reasons. First, the ordinary definition of the-word "descendant" or "issue" or the meaning of phrases such as "issue of their bodies" or "heirs of their bodies" have always meant and still continue to mean in their ordinary usage those descending or issuing out of the stock or blood. In their ordinary meaning these words or phrases have never included adopted children. As stated by the Illinois Supreme Court in *Stewart v. Lafferty* (1957), 12 Ill. 2d 224, 227:

> "No question is raised as to the ordinary definition of the word 'descendants.' It means one who descends or issues from an individual, including his children, grandchildren, and their children to the remotest degree. (Webster's New International Dictionary, 2d ed., p. 706; I Bouvier's Law Dictionary, 8th ed., p. 852; *Bates v. Gillett*, 132 Ill. 287.) The word 'descendant' is co-extensive and synonymous with issue, (*Wyeth v. Crane*, 342 Ill. 545; Carey and Schuyler, Law of Future Interests in Illinois, p. 219,) and an adopted child does not come within the ordinary meaning of the word 'issue' or 'descendant.' (*Hale v. Hale*, 237 Ill. App. 410; Carey and Schuyler, Law of Future Interests in Illinois, p. 228.)"

Secondly, the pre-1955 statute provided:

> "A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance, except that the adopted child shall not take property from the lineal or collateral kindred of the adopting parent per stirpes or property expressly limited to the body of the adopting parent." (Ill. Rev. Stat. 1939, ch. 38, par. 165.)

Thus, prior to the 1955 amendment, the statute plainly prohibited adopted grandchildren from taking property which was expressly limited to the body of the adopting parent. The use of such words or phrases as "descendant" or "issue" or "heirs of their body" taken in their ordinary meaning would clearly constitute such an expressed limitation. Thus, there is little doubt that under the pre-1955 statute, Jan Wielert, an adopted child, would be barred from taking under his grandmother's will.

■ But it is equally clear that by the 1955 amendment to the Probate Act (Ill. Rev. Stat. 1955, ch. 3, par. 165) the legislature has continued to broaden the definition of the word "descendant" as used for inheritance purposes beyond that of its ordinary meaning and has provided that, for the purpose of determining property rights under any written agreement, an adopted child is deemed a natural child unless a contrary intent is plainly shown.

This legislative change must also be considered in light of the fact that

> "When the Legislature revises a statute it must be presumed that the Legislature took cognizance of the prior decisions of the courts construing and interpreting the prior law. If, after a statute has been construed and interpreted, the Legislature makes radical changes in phraseology, an intention is thereby shown to establish a rule different from that announced by the courts." (*Dworak v. Tempel* (1958), 18 Ill. App. 2d 225, 230, *aff'd* (1959), 17 Ill. 2d 181, citing *McLaughlin v. People* (1949), 403 Ill. 493.)

See *In re Estate of Zimmerman* (1978), 63 Ill. App. 3d 560.

■ The undeniable effect of the 1955 amendment to the Probate Act was to transform a presumption against inclusion of adopted children in written instruments into a presumption in favor of such inclusion.

Although this amendment has not been construed by the courts with reference to instruments executed subsequent to its effective date, several decisions have alluded to this amendment in construing pre-amendment instruments. In *Stewart v. Lafferty* (1957), 12 Ill. 2d 224, the court held that the terms "descendants" and "issue" used in a will executed in 1914 would exclude adopted children. (12 Ill. 2d 224, 228.) However, the court concluded that the then recent amendments to the Probate Act (Ill. Rev. Stat. 1955, ch. 3, par. 165) indicated legislative policy contrary to the conclusion reached in that case with respect to instruments executed after September 1, 1955. (12 Ill. 2d 224, 230.) Similarly, in *Orme v. Northern Trust Co.* (1961), 29 Ill. App. 2d 75, *modified* (1962), 25 Ill. 2d 151, *cert. denied sub nom. Von Hardenburg v. Kennedy* (1962), 371 U.S. 935, 9 L. Ed. 2d 271, 83 S. Ct. 308, the court recognized that, while "issue" did not include adopted children in instruments prior to 1955, under the "modern view" adopted children are accorded a status of inheritance equivalent to that of natural children. The court then went on to say that the Illinois Legislature seems to have taken a step toward the "modern view" in its recent amendment to the Administration of Estate and Adoption Acts. (29 Ill. App. 2d 75, 89-90.) In *Ford v. Newman* (1978), 64 Ill. App. 3d 528, 530, *aff'd* (1979), 77 Ill. 2d 335, the court found, in construing a trust instrument drafted in 1941, that, under the law then in existence, the terms "issue" and "lawful issue" meant blood descendants unless the contrary intent was clearly shown and then concluded that no contrary intent had been shown as required by the then existing law. (Ill. Rev. Stat. 1939, ch. 3, par. 165.) The dissent in the *Ford* case (64 Ill. App. 3d 528, 533-37), however, stated that, even though the operative terms of the 1955 amendment limited it to instruments executed after its effective date, such a limitation did not abrogate it as a statement of the present

public policy of the State. Under the factual situation of the *Ford* case, the dissent concluded that the changed public policy should have been considered in construing the meaning of the terms "issue" or "lawful issue" and would have reached a contrary result. (64 Ill. App. 3d 528, 537.) No such problem faces this court since the public policy of treating adopted children as natural children was in effect before the will in question was executed. Ill. Rev. Stat. 1955, ch. 3, par. 165.

■■ Further, we must keep in mind that the testator is presumed to have known the law with respect to the property rights of adopted children and to have made her will in view of the existing statute. (*Stewart v. Lafferty* (1957), 12 Ill. 2d 224, 228; *Munie v. Gruenewald* (1919), 289 Ill. 468, 472.) Thus, the testator here must be presumed to have been aware of the radical shift in policy regarding adopted children when she executed her will in 1959, and again in 1973 when she executed the codicil confirming and ratifying its terms. To use a rather common technical term such as "issue of their body" in the drafting of a will, in light of the statutory changes that had made an adopted child a natural child and therefore in the eyes of the law a child of the stock or blood, cannot be considered an expression of a plain intent that an adopted child is to be excluded.[2] We can only conclude from the terms of the will in question that the testator had not plainly expressed her intent to exclude her adopted grandchild and therefore the use of the term "issue of their body" does include him.

Defendants further contend that the trial court erred in refusing to admit extrinsic evidence to ascertain the intent of the testator. It is, of course, a fundamental rule of law that the court is required to ascertain the testator's intention from the terms of the will itself and give effect to that intent. (*Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 308.) Where an ambiguity exists, the court will accept extrinsic evidence as an aid in construction of a will to determine the testator's intent at the time of execution. (*O'Connell v. Gaffney* (1962), 23 Ill. 2d 611, 614.) Surrounding circumstances may be considered if they are indicative of the testator's intent at the time of the execution of the will. *Weir v. Leafgreen* (1962), 26 Ill. 2d 406, 414-15.

■ While such are the ordinary rules of evidence, they are not applicable in this case. It is the statute itself which limits the determination of the intent to exclude an adopted child to the terms of the instrument itself. The express language of the statute, "unless the contrary intent plainly appears by the terms [of the instrument] * * *," is unambiguous and clear. The rules of statutory construction dictate that language in statutes must be given its plain and ordinary meaning. (*Illinois*

---

[2] For suggested language, see Hardin and Gill, *Will Clauses to Cover Adopted Children*, 45 Ill. B. J. 360 (1957).

*Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194.) A court has no right to say that the legislature did not mean what, in plain language, it said and must give effect to legislative intention regardless of its consequences. (*Beckmire v. Ristokrat Clay Products Co.* (1976), 36 Ill. App. 3d 411, 415.) A court will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent. (*North Bank v. F & H Resources, Inc.* (1977), 53 Ill. App. 3d 950, 952.) The court must look only to the terms of the instrument itself to find the expressed intent to exclude adopted children from participation in the estate. Extrinsic evidence was clearly not admissible.

The trial court was justified in awarding attorney fees to the plaintiff's attorney. The will did require construction by the court.

The judgment of the trial court is affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.