ROGER L. SEGUR *et al.*, Plaintiffs-Appellees, v. SHARON McGILL SBRIZZI *et al.*, Defendants-Appellants.

Third District    No. 3—98—0072

Opinion filed April 20, 1999.—Rehearing denied May 20, 1999.

HOLDRIDGE, P.J., concurring in part and dissenting in part.

B. Franco Laterza (argued) and Lucila O. Espedido, both of Law Offices of
B. Franco Laterza, P.C., of Chicago, for appellants.

Ivan Looker (argued), of Looker & Looker, and Ronald Boyer, of Boyer &
Thompson, both of Watseka, for appellees.

JUSTICE HOMER delivered the opinion of the court:
The three plaintiffs, the adopted children of Helen McGill's two
daughters, filed a suit for partition of a farm located in Iroquois County
and held by Helen's estate. Each plaintiff claimed a one-fifth interest
in the farm based upon the terms of Helen's will and section 2—4(f) of
the Probate Act of 1975 (755 ILCS 5/2—4(f) (West 1996)). Helen's two
natural-born grandchildren objected. The trial court granted summary
judgment in favor of the plaintiffs, and we affirm.

## FACTS
This dispute among Helen McGill's five grandchildren concerns
their inheritance of Helen's 273-acre farm (the River Farm). In 1940,
Helen devised the River Farm in her will as follows:
"I hereby give, devise and bequeath all my property owned by me
at my death, real, personal and mixed, to my four children, share
and share alike, except the 273 acres known as the River Farm in
Middleport Township, Iroquois County, Illinois, that to remain
intact and each to receive their share of rents therefrom after all
necessary repairs and taxes are paid each year. At the death of any
of my four children it then becomes the property of the living chil-
dren and so on until the death of the last child, when it shall
become the property of *my grandchildren*." (Emphasis added.)
When Helen died a year later, she was survived by all four of her
children: David W. McGill, Maurice McGill, Lorene Segur, and Helen
Bell. At that time, Helen also had two natural-born grandchildren, Da-
vid T. McGill and Sharon Sbrizzi, both of whom were born to her son,
David, prior to the execution of her will. In the years after Helen's
death, her daughters both adopted children; Lorene Segur adopted
two sons, Roger and Alan, and Helen Bell adopted one son, John.
Upon the death of Helen's last surviving child, the five grandchildren
remained.

Seeking to claim their interest in the River Farm, the three adopted grandchildren filed the instant action for partition. The defendants, the two natural-born grandchildren, objected, arguing that because the plaintiffs were adopted they were not entitled to any inheritance under the terms of their grandmother's will.

Cross-motions for summary judgment were filed. After a hearing, the trial court found that based upon section 2—4(f) of the Probate Act of 1975 (Act) (755 ILCS 5/2—4(f) (West 1996)) and our supreme court's decision in *First National Bank v. King*, 165 Ill. 2d 533, 651 N.E.2d 127 (1995), each plaintiff was entitled to inherit a one-fifth interest in the River Farm as conveyed in Helen's will. The defendants appealed.[1] On appeal, they argue that the trial court erred in granting summary judgment in favor of the plaintiffs and against the defendants and that section 2—4(f) of the Act is unconstitutional.

## ANALYSIS

### I. Summary Judgment

■ Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996). When interpreting the provisions of a will, summary judgment may be appropriate if the four corners of the instrument reveal no ambiguity as to the testator's intent. *Orso v. Lindsey*, 233 Ill. App. 3d 881, 885-86, 598 N.E.2d 1035, 1038-039 (1992). This court conducts *de novo* review of a trial court's decision to grant summary judgment. *Wells v. Enloe*, 282 Ill. App. 3d 586, 589, 669 N.E.2d 368, 371 (1996).

■ The defendants argue that the plaintiffs are not entitled to inherit any portion of the River Farm under the terms of Helen's will because, according to a common law rule in effect at the time she executed her will, the plaintiffs, as adopted grandchildren, would not have inherited under the will. In support, they cite the "stranger to adoption rule," which provides that when a provision is made in a will for the children of some person other than the testator, an adopted child is presumptively not included unless there is language in the will or circumstances surrounding the testator at the time that she made her will which make it clear that the adopted child was intended to be included. See *Smith v. Thomas*, 317 Ill. 150, 158, 147 N.E. 788, 790-91

---

[1]The defendants-appellants in this case are David McGill and Sharon Sbrizzi, Helen's two natural-born grandchildren. The McTaggarts (who lease the farmland) and the Cummings (who lease the house on the property) are not parties to this appeal.

(1925). Although the defendants present an accurate recitation of the status of the common law at the time Helen's will was executed, that law is not controlling in this case.

■ Our state legislature has retroactively reversed the common law rebuttable presumption with respect to the status of adopteds, changing it from a presumption of noninclusion to a presumption of inclusion. This new rule of will construction is set forth in section 2—4(f) of the Act, which provides in pertinent part:

> "After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed before September 1, 1955, unless one or more of the following conditions applies:
>
> (1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence." 755 ILCS 5/2—4(f) (West 1996).

Under section 2—4(f), the instant plaintiffs are presumptively considered children born to their parents for the purpose of determining property rights under their grandmother's will unless the intent to exclude them is demonstrated by the terms of the will by clear and convincing evidence. Although the defendants argue that the terms of Helen's will demonstrate that she intended to bequeath her River Farm to her "bloodline" and thereby exclude any adopted grandchildren, we cannot agree.

Citing numerous cases decided prior to the enactment of the current version of section 2—4(f) of the Act, the defendants argue that use of a term such as "heirs," "lawful issue," or "grandchildren," standing alone, indicates a clear intent not to include adopteds. Because, however, section 2—4(f) was enacted to reflect the "modern view" that adopted children are to be afforded a status of inheritance equivalent to that of natural children (see *Wielert v. Larson*, 84 Ill. App. 3d 151, 155, 404 N.E.2d 1111, 1114 (1980)), cases interpreting such terms prior to its enactment are not particularly helpful to our analysis.

Our supreme court recently undertook the task of interpreting the terms of a will in light of the rebuttable presumption established in section 2—4(f). *First National Bank v. King*, 165 Ill. 2d 533, 651 N.E.2d 127 (1995). In *King*, the court held that a testator's limitation of a beneficiary class to "lawful descendants" and provision for distribution "per stirpes" did not demonstrate, by clear and convincing evidence, an intent by the testator to exclude adopted persons. Therefore, the adopted child of the testator's grandson was considered a lawful descendent of the testator and was entitled to receive proceeds from a

trust created by the will. *King*, 165 Ill. 2d at 541-42, 651 N.E.2d at 131. In rendering this decision, the court expressly rejected the contrary decision reached by the appellate court in *Continental Bank, N.A. v. Herguth*, 248 Ill. App. 3d 292, 617 N.E.2d 852 (1993).

In affirming *King*, our supreme court adopted the following reasoning from the appellate court's decision in the case:

> "The meaning ordinarily prescribed to the term 'descendent' under the old law, itself, was merely a presumption. It did nothing more than provide a rule of construction where the testator's actual intent was unknown, just as the new presumption established by section 2—4(f) does. Accordingly, *** the use of the term 'descendent,' standing alone, cannot be regarded as clear and convincing evidence of an intent to exclude adopted heirs. There must be something more in the terms of the instrument itself to demonstrate, at a minimum, that the testator actually considered the contingency of adoption." *King*, 165 Ill. 2d at 540-41, 651 N.E.2d at 130-31, citing *First National Bank v. King*, 263 Ill. App. 3d 831, 820-22, 635 N.E.2d 755, 760-61 (1994).

■ Similarly, in the instant case we find that Helen's use of the term "grandchildren," standing alone, does not constitute clear and convincing evidence that she intended to exclude any adopted grandchildren from taking under her will so as to rebut the presumption created by section 2—4(f). In describing persons who were to receive benefits under her will, Helen used a specific reference to her "four children" and a general reference to her "grandchildren." Knowing that she had only two grandchildren at the time of execution of the will, she apparently intended the bequest to ultimately include any future grandchildren as well. Further, there is nothing within the four corners of Helen's will to suggest that she contemplated or intended to exclude grandchildren that might be adopted rather than born into the family.

Based upon our supreme court's decision in *King*, section 2—4(f) of the Act, and the plain language of Helen's will, we determine that there exists no genuine issue of material fact regarding the plaintiffs' right to inherit under the terms of Helen's will and that the plaintiffs are entitled to judgment as a matter of law. Therefore, we affirm the trial court's grant of summary judgment to the plaintiffs.

## II. Constitutional Argument

■ The defendants also contend that section 2—4(f) of the Act is unconstitutional. However, all but one of the constitutional arguments raised by the defendants were asserted in *King* and expressly rejected by the appellate and supreme courts in that case. See *King*, 263 Ill. App. 3d at 827-29, 635 N.E.2d at 765-66; *King*, 165 Ill. 2d at 542-43,

651 N.E.2d at 131-32. Therefore, to the extent that the defendants have repeated those arguments, we are bound by the decision in *King*.

The defendants do, however, raise one constitutional contention not directly addressed by the *King* court. Without identifying the specific state or federal constitutional provisions supporting their position, the defendants assert that section 2—4(f) violated Helen's constitutional right to "dispose of her legacy as she desired." They cite cases on a variety of topics to support their argument that it was simply "unfair" to Helen for the legislature to make this retroactive change in the law. However, the defendants' argument on this issue is poorly developed, the cases cited are not on point, and we question whether the defendants even have standing to raise this issue on Helen's behalf.[2] A reviewing court is not a depository in which a litigant may leave the burden of argument and research. *In re Estate of Kline*, 245 Ill. App. 3d 413, 434, 613 N.E.2d 1329, 1344-345 (1993). Accordingly, we reject the defendants' constitutional challenges.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Iroquois County is affirmed.

Judgment affirmed.

BRESLIN, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, specially concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority's opinion rejecting the defendant's constitutional argument that section 2—4(f) violated Helen's constitutional right to "dispose of her legacy as she

---

[2]The defendants argue that the United States Supreme Court's decision in *Hodel v. Irving*, 481 U.S. 704, 95 L. Ed. 2d 668, 107 S. Ct. 2076 (1987), gives them standing to pursue this claim on Helen's behalf. In *Hodel*, the Court determined that the descendants of certain American Indians had standing under the "prudential standing doctrine" to serve as the representatives of their ancestors' fifth amendment rights in challenging a federal law that provided that certain reservation land could not be disposed of through devise or intestacy, but had to escheat to the tribe. The Court noted that the *Hodel* case presented a unique situation and ordinarily a decedent's surviving claims must be pursued by an executor or administrator on behalf of the estate. Therefore, we find *Hodel* distinguishable and determine that the instant defendants have failed to satisfy this court that they have standing to raise this constitutional claim.

304

desired." The right to pass on property to one's heirs is a valuable and constitutionally protected right. *Hodel v. Irving*, 481 U.S. 704, 715, 95 L. Ed. 2d 668, 679, 107 S. Ct. 2076, 2083 (1987). I would find under the *Hodel* rationale that Helen's natural-born grandchildren have sufficient standing to assert and defend that right. *Hodel*, 481 U.S at 711-12, 95 L. Ed. 2d at 677, 107 S. Ct. at 2081.

Helen also had the right to exclude nonblood persons from taking any part of her legacy. *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 62 L. Ed. 2d 332, 343-44, 100 S. Ct. 383, 391 (1979). Now, decades after she clearly expressed her intentions in her will, the legislature has attempted to reach back through time and defeat her intention. I would find that this attempt by the legislature to negate the clear intent of the testator some 40 years after her death violated due process. *Hodel*, 481 U.S. at 717, 95 L. Ed. 2d at 681, 107 S. Ct. at 2084. I therefore dissent on that basis from that portion of the majority's disposition.